## LIABILITY OF SURETIES ON BOND OF STATE TREASURER.

### Common Pleas Court of Franklin County.

### THE STATE OF OHIO V. WM. S. MCKINNON ET AL.

#### Decided, February 28, 1911.

*Sureties—Liability of, on the Bond of a State Treasurer—Where Public Funds Were Unlawfully Loaned and Interest Accepted Thereon as a Gratuity—Unlawful Acts Distinguished from Those Merely Unofficial—Measure of the State's Damages—Liability of Sureties Co-extensive with that of the Principal.*

The condition of the bond of a state treasurer that he "shall, during the term of his office, faithfully discharge the duties imposed upon him by law to the best of his knowledge and belief," renders his sureties liable for the wrongful and unlawful loaning out by him of funds in his custody belonging to the state, notwithstanding subsequent compliance by him with the other condition of the bond to "turn over and deliver to his successor in office, or any other person entitled thereto, all money and other properties coming into his custody as treasurer, as required by law."

*H. J. Booth* and *R. W. McCoy,* for plaintiff.
*J. E. Todd, Cyrus Huling* and *E. N. Huggins,* contra.

BIGGER, J.

The case is submitted on general demurrer to the petition in this case as well as in case No. 58306.   Demurrers to these petitions have been once submitted to another branch of this court

and upon consideration of the court they were overruled (9 N. P. [N. S.], 513). Since that decision the Supreme Court has decided the question of the criminal liability of a county recorder for embezzlement of interest received from a wrongful loan of public moneys in his hands, holding that it is not a criminal offense for the recorder to appropriate to his own use interest thus received by him. In the belief that this decision has some application to the question raised by these demurrers, the case has been again argued and submitted to the court. Elaborate briefs have been submitted, and these I have carefully read and have examined most of the cases cited, and others, and have spent very considerable time in the study of the question raised by these demurrers.

The condition of the bond in the McKinnon cases is as follows:

"The condition of the above obligation is such that, whereas the said William S. McKinnon has been duly elected treasurer of the state of Ohio; now, if the said William S. McKinnon shall, during his term of office, faithfully discharge the duties imposed upon him by law to the best of his knowledge and belief, and shall turn over and deliver to his successor in office, or any other person entitled thereto, all money and other properties coming into his custody as treasurer, as required by law, then this obligation shall be void; otherwise, it shall remain in full force and effect."

This bond, it will be observed, contains two conditions: the first being that which the statute provides shall be a sufficient condition of official bonds, while the second adds a condition as to turning over all money and other property to his successor. Doubtless the bond would be of the same force and effect had not the second condition been added, as it would be a part of his official duty to turn over all money and property coming into his custody as treasurer without any such specific condition being included in the bond.

The petitions then recite that the treasurer wrongfully, unlawfully and continuously loaned out and kept loaned out to and deposited with various corporations, co-partnerships, associations, and other persons in the state of Ohio, large amounts of the state funds and received from said corporations, co-partnerships, associations, and other persons, as a consideration for said loans

and the use of said public moneys, large sums of money and other things of value, which he wrongfully and unlawfully retained and appropriated to his own personal use, amounting in the aggregate to not less than the sums which are stated in the petitions, and for which the state asks judgment.

The statute of the state, Section 183, Revised Statutes (Section 299 of the General Code), provides in substance that the treasurer shall keep all of the public moneys in the state treasury provided by law until the same shall be transferred or paid out according to law.

Section 6841, Revised Statutes (Section 12873 of the General Code), makes it embezzlement for public officers charged with the collection, receipt, safe-keeping, transfer and disbursement of the public funds to loan the same to any company, corporation, association, or individual, with or without interest.

The question raised by these demurrers is, do the matters stated in the petitions, assuming them to be true, as we must on demurrers, constitute a breach of the conditions of these bonds so as to give rise to a right of action against the state treasurer and the sureties on his bonds. The condition of the bonds is that he shall faithfully discharge the duties imposed upon him by law. To withdraw the public money from the treasury in large amounts for the purpose of loaning the same to corporations, co-partnerships, associations, and other persons, when the law specifically forbade the doing of this, would certainly constitute a breach of the condition of the bonds that the treasurer shall, during his term of office faithfully discharge the duties of his office. There can be no controversy about the rule of law governing the liability of sureties on official bonds. The principle is too well established to be now open to question. The only difficulty which can arise is in the application of the principle.

The position of counsel for the defendant is that as it was unlawful for the treasurer to loan the money; that when he loaned it unlawfully and received interest thereon, he received the interest unlawfully, that is, not under any law fixing and defining his duties as treasurer, but in direct violation of his duty and the law, and that for this reason the sureties on his

bond can not be held liable for the money thus unlawfully received by him. But whatever view may be taken as to the extent of the liability of the sureties on the bond, I find myself unable to accept the view that they are without any legal liability by reason of the unlawful conduct of the state treasurer in thus loaning out the public moneys. It seems entirely clear to my mind that when the state treasurer withdrew the public money. from the treasury in violation of the. positive inhibition of. the statute, that he violated the condition of his bond for the faithful performance of his duty. If that be true, then the liability attached *eo instanti* that the money was thus wrongfully withdrawn. The mere fact that the principal sum withdrawn from the treasury may have been returned to the treasury before the expiration of his term of office will not cure the breach of .this condition of the bond. I know of no means by which one who has committed a breach of the condition of his bond can cure the same by his own unaided act, any more than one who has committed a crime can atone for it by his own unaided act. It is not a question of the extent of the damages which the. state may have suffered. It is a question of legal liability for a breach of the conditions of the bond.

The argument has proceeded wholly, it seems to me, upon the question of the measure of the state's damages rather than upon the question of the legal liability of the sureties on the bond. It can not certainly be successfully maintained that the conditions of these bonds are fully complied with merely because the treasurer may have turned over to his successor all the moneys which he unlawfully withdrew from the treasury and deposited with corporations and individuals. Upon what principle of law can it be maintained that a state treasurer may withdraw from the treasury millions of the state's funds and entrust the same to private corporations and individuals for his own personal gain, causing risk of loss of the state's funds to the extent of millions of dollars beyond the penal sum named in his bond, without committing a breach of the condition of his bond for the faithful performance of his duty as state treasurer?

The question of the right to maintain such action does· not depend upon the amount of actual pecuniary. damages sustained.

If there is any principle of law which seems to be thoroughly settled and determined by judicial decision, both in Ohio and elsewhere, it is that where a legal right has been invaded the plaintiff may maintain his action, although he may be entitled to nominal damages only. The damage is not merely pecuniary, but every injury whereby one is hindered or deprived of his right imports a damage. 13 Cyc., page 14, and cases cited.

Upon this subject Sutherland says in his work on damages at page 2:

"Every infraction of a legal right in contemplation of law causes injury. If the infraction is established, the conclusion of damage inevitably follows. This deduction is made though it actually appears and is recognized in the case that there was in fact no injury. and even a benefit conferred. This legal conclusion of damages is generally indeterminate as to amount. It is that some damage results, and then if no proof is given of the actual damage, judgment can be given only for a minimum sum, nominal damages. * * * In many cases of tort, however, the injury complained of is of such a nature that compensation can not be awarded by any precise pecuniary standard, and there is no legal measure of damages, because the injury does not consist of any pecuniary elements or elements in which the value can be measured or expressed in money. The compensation which shall be allowed for an injury of this character is, by the common law, referred to the sound discretion and dispassionate judgment of a jury."

And again the same author says at page 7:

"The right to damages vests at once. when the injurious act is done. Even where there is no legal measure of damages as in cases of slander or assault, the injured party has an indeterminate right to compensation the instant he receives the injury. The verdict of the jury and the judgment of the court thereon do not give but only define the right. Such right when vested is to the injured party of the nature of property and is protected as property in tangible things is protected. It can not be annulled by legislation nor otherwise extinguished, except by satisfaction, release or the operation of statutes of limitation."

Again the same author says on page 9:

"For every actionable injury, there is an absolute right to damages, and the law recognizes such an injury whenever a legal right is violated. Rights are legal when recognized and

protected by law. Every invasion of such a right threatens the right itself and to some extent impairs the possessor's enjoyment. The logical sequence of finding such an invasion is the legal sequence, a legal injury, and this entitled the injured party to compensation.''

Again the same author says at page 13:

"The failure to perform a duty or contract is a legal wrong, independent of actual damage, to the party for whose benefit the performance of such duty or contract is due. The omission to show actual damages, and the inference therefrom that none have been sustained, do not necessarily render the case trivial. The law has regard for the substantial rights of parties although it may overlook trivial things. When such right is violated the maxim *de minimis non curat lex* has no application.''

This is the law in Ohio as well as elsewhere, as was decided in *Everett & Whiteman* v. *Bancroft*, 22 O. S., 172. That where nominal damages must be given, in any event, a petition is not demurrable, see Bates, Volume 1, page 272.

Defendant's counsel say that the petition does not allege that the treasurer, as such, received the increment of interest mentioned in the petition, nor that the money was loaned out by the incumbent as treasurer, and follow this up with the claim that it is clear upon the facts stated that the treasurer could not have received the increment of interest in his position as state treasurer. The petition states the facts, and it would have added nothing to the petition for the pleader to have stated his conclusion of law upon the question of the capacity in which the state treasurer acted, either in withdrawing the money from the treasury, or in receiving interest on the deposits. Nor do I see what difference it can possibly make whether we take one view or the other of the theoretical question of the capacity in which the state treasurer acted when he withdrew the public funds from the treasury and deposited them elsewhere for the purpose of personal gain. Certainly, this bond was not given to prevent the state treasurer from proceeding to act in conformity to law. Neither was it given to prevent the state treasurer from withdrawing the funds in his official capacity. The purpose of the state was to secure itself by a bond against the treasurer withdrawing and embezzling the funds committed to his care,

whether officially or unofficially, and those who became sureties for his faithful performance of duty can not escape liability by any refinements as to the capacity in which he embezzled the public funds.

Counsel for the defendant sureties further say that it is not claimed that the state treasurer violated or failed to perform any of the duties enjoined upon him by law with respect to accounting for all the moneys of the state which lawfully came into his hands as treasurer of state; that it is only charged that he did not keep the money in the vaults of the treasury as required by law, but that it is not alleged that any loss resulted to the state from such failure to keep the money in the vaults. This argument seems to proceed upon the assumption that the state treasurer had in some way made good or cured the breach of his official duty when he turned over to his successor all the money that he had withdrawn unlawfully from the treasury. But that was only one of the conditions of his bond. The other was that he would faithfully discharge the duties of his office while administering it, and that is not cured by compliance with the other condition, to-wit, turning over the money to his successor that he had unlawfully withdrawn from the treasury. It can not be said that this breach was a mere trivial matter, and that as no loss of the principal sum withdrawn from the treasury resulted, that therefore the state has no right of action for this breach of the condition in the bond. It can not be treated by this court as a trivial matter that the treasurer of state, who has given a bond in the penal sum of $600,000, had for long periods of time withdrawn more than three millions of dollars of the state's funds and intrusted them to private corporations and individuals for his own gain. This was not a trifling matter to which the maximum *de minimis non curat lex* can be applied. On the contrary, it was a most flagrant breach of official duty and the liability upon the bond for the legal consequence of the breach attached the moment the funds were withdrawn from the state treasury. Such a breach of official duty on the part of those who are entrusted with public funds endangers the right itself to have the public funds handled by its custodian in the manner enjoined upon him by the law, and

for a breach of that duty I have no doubt the state has a right of action against the obligors upon the bonds. As I have pointed out, it is no answer to this to say that the money that was withdrawn was turned over to his successor. By no act of the state treasurer could he cure the breach. The right accrued to the state immediately upon the breach, and there was no officer of the state empowered to release that right, nor is it claimed that it is barred by the statute of limitations. The state being here insisting upon the assertion of its right, it can not be defeated because there may be uncertainty as to what is the measure of its damages.

Another branch of this court has held that the state has a right to recover the amount of interest received by the treasurer, and for that he has undoubtedly the authority of the circuit court of our own state in the case of *Glenville* v. *Englehart,* 19 C. C., 285, although there is authority to the contrary, and especially in the Georgia case but by a divided court, while the decision by the circuit court of this state was unanimous. I do not regard the Wisconsin case as entitled to any particular weight as an authority for the reason that the principle announced was not necessary to a determination of the question decided, and, as the judge delivering the opinion said, the principle announced was simply assumed for the purposes of the case. It is apparent, of course, that such a statement is entitled to no weight as a judicial determination of the legal question involved. The utmost diligence of both counsel and the court has brought to light but one case in point, as I view it, to support the principle contended for, and that utterly ignores the principles which I have been attempting to point out in this decision.

Most of the cases cited by counsel in which it was held that sureties were not liable upon the bond are cases like the case of *State* v. *Griffith,* 74 O. S., 80, where it was held there was no liability because there was no breach of the bond. It was no part of the duty of the clerk of the board of education to receive this fund arising from the tuition of non-resident pupils, and for that reason the fund never came into his hands in his official capacity, and there could be no breach of official duty with

reference to such funds.   But there is a sharp distinction be-
tween such cases and the case here, where the funds came into
the hands of the treasurer officially, and it was his duty under
the law to keep them in the state treasury, and a breach of
his official duty to loan them out.

Having reached the conclusion that the petitions in this case
are not demurrable, it is not necessary that the court should
undertake to determine what the measure of damages is in this
case.   Such a determination can not arise upon the demurrer
and its decision could only embarrass the trial judge whose duty
it is to decide that question.   However, in view of the elaborate
argument made by counsel, it may not be amiss to state a few
considerations which have occurred to me from the study of this
case upon the question of whether or not there is a right to
more than nominal damages, and these I state without under-
taking to announce any conclusion upon what the true measure
of damages may be, and for the reason just stated.

While it is an established and well recognized principle that
the sureties on a bond are not liable for every misfeasance of
the principal committed while in office, yet I think it is as well
settled that after a breach is committed of the conditions of the
bond the liability of the sureties is always co-extensive with that
of the principal.   On this point Sutherland says at page 537 of
Volume 2, that the rule is that sureties "are bound to the same
measure of responsibility—that is, the same rule of damages
necessarily applies to both.   In respect to the other party to
the contract, they are equal principals in extent of liability."

Judge White, in discussing this question in the case of *Probst
et al* v. *Skillan,* 16 O. S., says, at page 387:

"The counsel of the defendants claim that the damages should
be only nominal for the reason that the plaintiffs, as the collec-
tion and the surrender of the notes were unauthorized, could
still resort to the maker for payment.   Upon ordinary princi-
ple, it is no answer to a demand for damages founded upon
the wrongful conversion of property, that the plaintiff has a
right to reclaim it from those to whom it has been wrongfully
disposed of.   Nor could the defendant Skillan in an action
against him for the conversion of the notes have mitigated the
damages by the fact that the plaintiffs could still collect their
debt from the maker of the notes.

"The measure of the damages in this respect is not different when he is sued on his bond for the tortious conversion of property to his own use and where, as in this case, such conversion constitutes a breach of the bond. Nor can the fact that some of the obligors are sureties be allowed to vary the rule. For the measure of damages arising from breaches of the bond is necessarily the same against all the obligors.

"In trover the measure of damages for the conversion of a chose in action, as a bill, note, bond or other security for the payment of money, is the amount collectible thereon."

It will be observed that Judge White uses the same language as Sutherland with respect to the extent of the liability of sureties upon a bond after condition broken; that the liability is necessarily co-extensive with that of the principal. When there has been a breach of condition, I am not aware of any principle which holds the sureties to one measure of damages and the principal to another.

Furthermore, as I understand the rule, as to measure of damages in cases of conversion of money, it is the money converted with interest thereon from the time of conversion. *Am. & Eng. Encyc. of Law*, 1st Edition, Volume 28, page 732, and cases cited under article on trover and conversion; *Sutherland on Damages*, Volume 3, page 488; *Woolsey v. Seeley*, Wright's Reports, 360.

Of course, no complaint could be made by the defendants if the state seeks to recover a less amount than that to which it may be entitled. While it is true that the law forbade the treasurer to loan the money and make a profit therefrom, there was nothing to prevent the state from making a profit upon its idle money if it had been in the treasury, and I believe during most of the period while Mr. McKinnon held the office there was a provision of law for depositing the state's money in approved depositories at interest.

I mention these considerations as tending to lead to the conclusion that the state is entitled to recover more than mere nominal damages by reason of the breach of the conditions of these bonds set out in the petitions.

Of course, the decision in the Pierson case can not in any way affect the conclusion reached here, as its only pertinency is upon

the question of the right to recover the measure of damages which the plaintiff contends for, but does not affect the question as to whether there was a breach of the conditions of these bonds which occasioned a legal liability on the part of these defendants.

For the reasons stated the demurrers must .be overruled.